615 A.2d 95

**PENNRIDGE ELECTRIC, INC., Appellant,**

v.

**SOUDERTON AREA JOINT SCHOOL AUTHORITY.**

Superior Court of Pennsylvania.

Argued June 4, 1992.

Filed Oct. 20, 1992.

202

John Elliott, Blue Bell, for appellant.

Wilhelm L. Gruszecki, Lansdale, for appellee.

Before CAVANAUGH, DEL SOLE and BECK, JJ.

BECK, Judge:

Plaintiff-appellant Pennridge Electric, Inc. appeals from the order of the trial court granting defendant-appellee Souderton School Authority, Inc.'s petition for Non Pros Judgment in this 18–year old lawsuit. For the reasons set forth below, we affirm.

This case has had a tortuous history. We adopt the trial court's description of it as follows:

Plaintiff, Pennridge Electric, Inc., filed a Complaint on October 16, 1973, against defendant, Souderton Area School Authority and several members of the School Authority as individual defendants. Plaintiff alleged that defendants wrongfully declared the plaintiff in default on an electrical contract bid on April 21, 1972.... Plaintiff claimed that defendants' wrongful demand for the amount of the bid bond subsequently inhibited plaintiff's ability to secure bond coverage for other bids. Thus, plaintiff contended, it was unable to bid on many subsequent contracts resulting in lost profits in excess of $100,000.

From the date of the filing of the Complaint in 1973 until 1983 several motions were filed by both parties and discovery was conducted. On December 28, 1982 counsel for both parties agreed to an Order of the court to continue the case indefinitely. Such a continuance Order was never revoked.

The last pleading in this case prior to 1988 was filed on December 5, 1983. No further action was taken in the case until March 28, 1988 when plaintiff filed a Praecipe requesting that the court withdraw the plaintiff's prior motion to disqualify the law firm that was representing the defendants.

Defendants filed a Petition for Non Pros Judgment with this court on June 13, 1989, alleging that plaintiff's inaction for over four years constituted abandonment of the suit. Plaintiff, on July 11, 1989, filed Preliminary Objections to the defendants' Motion. The Preliminary Objections were dismissed on February 21, 1990 for being procedurally improper.

Oral argument on the Petition for Non Pros Judgment filed June 13, 1989, was held on June 8, 1990. This court issued an Order on September 5, 1990, deferring disposition on the petition in order to give plaintiff's counsel the opportunity to substantiate through deposition testimony his allegation that the four year delay was due to ongoing settlement negotiations. Following the completion of such depositions, oral argument on the Petition for Non Pros Judgment was again held on August 12, 1991. On October 11, 1991, this court granted defendants' Petition for Non Pros Judgment filed June 13, 1989, and on November 7, 1991, plaintiff filed its Notice of Appeal.

Trial Court Opinion, pp. 2–3 (footnote omitted).

Appellant claims that the trial court's grant of defendant-appellee's motion for non pros was erroneous for the following reasons: (1) the trial court misapplied the standard for non pros; (2) the delay in the case was caused by good-faith efforts to settle the case, administrative errors of the court in failing to list the case for trial, and a continuance to which appellees consented; (3) appellees created delays in the case

constituting waiver of appellant's delay; and (4) as to Pa. R.C.P. 209, appellees failed to follow proper procedure on petition and rule, which should have resulted in the trial court's finding appellant's statement of facts in its response to the motion to be deemed conclusive. Appellant's Brief pp. 2–3.[1]

■ It is well-settled law that the decision to grant a judgment of non pros rests within the discretion of the trial court, and the exercise of such discretion will not be disturbed on appeal absent proof of a manifest abuse thereof. *Penn Piping, Inc. v. Insurance Co. of North America*, 529 Pa. 350, 603 A.2d 1006 (1992); *Gallagher v. Jewish Hospital Ass'n*, 425 Pa. 112, 228 A.2d 732 (1967). We have carefully reviewed each of the issues raised by appellant. We find no manifest abuse of discretion, and therefore affirm.

Our Supreme Court recently addressed the requirements for a judgment of non pros in *Penn Piping*. In that case, the court re-examined the three-part test for non pros enunciated in *James Brothers Lumber Co. v. Union Banking and Trust*, 432 Pa. 129, 247 A.2d 587 (1968). The *James Bros.* test permitted a court to enter a judgment of non pros where "(1) a party has shown a lack of due diligence by failing to proceed with reasonable promptitude; (2) there is no compelling reason for the delay; and (3) the delay has caused prejudice to the adverse party." 432 Pa. at 132, 247 A.2d at 589.

In *Penn Piping*, the Supreme Court affirmed the first two prongs of the test, but modified the third, stating:

in cases involving a delay for a period of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket. Thus, if there is a lack of due diligence in failing to proceed with reasonable promptitude; if there is no compelling reason for the delay; and if the delay is for two years or

---

1. Appellant also filed a reply brief reiterating arguments raised in his original brief; no additional issues were raised therein.

more, the case may be dismissed for lack of activity on the docket.

*Ibid.*

■ The period of docket inactivity in this case lasted from December 5, 1983 through March 28, 1988. The trial court found that a delay in docket activity of more than four years demonstrated a lack of due diligence on the part of plaintiff's counsel, and we agree. *See, Penn Piping, supra* (delay of six years); *International Telephone and Telegraph Corporation v. Philadelphia Electric Company,* 250 Pa.Super. 378, 378 A.2d 986 (1977) (two years, nine months). Appellant claims that this period of delay was due to ongoing settlement negotiations between the parties, which appellant avers to be a compelling reason for the delay.

We disagree. Absent extraordinary circumstances, it is hard to imagine any reason to permit settlement negotiations to continue without result for this long at the expense of any activity on the docket. The law favors settlement, and while counsel should be permitted a reasonable period of time in which to attempt to work out an amicable resolution, at some point the knowledge that there is no deadline on the negotiations serves to impede, rather than promote, settlement. It is often the prospect of vigorous litigation to ensue should the settlement negotiations break down that prompts the parties to engage in serious discussion as to what issues divide them and whether or not they can be resolved.

The facts of the instant appeal demonstrate the dangers of too-protracted settlement negotiations. Depositions taken of the attorneys on both sides of the matter show that, while the attorneys did discuss settlement with each other in the four and a half year period of delay, these conversations occurred sporadically, infrequently, and without any subsequent progress in negotiations. Some of the discussions took place in a mall and at a wrestling tournament. Attorney for appellant testified that opposing counsel told him as early as July of 1984 that "he was meeting resistance at any talk of settlement," and that at the end of the year, opposing counsel stated "that [defendant] was only willing to consider a very nominal

cash settlement." Appellant's attorney stated that at that time he believed the possibilities for settlement were bleak.

In 1985, appellant's attorney formulated a settlement proposal that he discussed with appellee's counsel, but was told by appellee's counsel that there was no possibility his clients would agree to pay the figure demanded. Appellant's attorney recalled that the case was discussed again briefly in 1986, but to no effect. Finally, in early 1987, appellee's counsel told him that the case was going to have to be tried because nothing they were discussing was in the range of what was acceptable to both parties.

Attorney for appellee testified that, in his opinion, there was never any real likelihood of settlement. After review of his time sheets for that period, he recalled that he did have settlement discussions with appellant's counsel, but that he never considered the conversations to be meaningful because the parties were too far apart in their positions to make settlement a realistic possibility.

As to any written communication, we note that there was apparently no correspondence between the parties in the period of delay between December, 1983 and March, 1988 that references a settlement proposal. Appellant attributed the lack of correspondence to the informal, "diplomatic" way in which settlement negotiations were being conducted.

The trial court found that, based on the deposition testimony of the two counsel, it was apparent that the parties were never close enough in their figures to reasonably believe that a settlement was possible. Trial Court Opinion, p. 13. The court concluded that "to allow these types of discussions to continue for more than four years before concluding that a settlement could not be reached was not appropriate." *Id.* We agree. We therefore reject appellant's claim that the settlement discussions here constituted a compelling reason for the delay in this case.

■■■ Appellant has identified three other factors that it claims either excuse the four-and-a-half year delay or constitute a waiver of any delay by appellee: (1) the failure of the

court administrator to place the case on the trial list, despite the court's order to do so; (2) appellee's agreement in 1982 to a continuance of the case; and (3) appellee's filing a motion for summary judgment in August, 1983, which appellee failed to have listed for argument. We do not find that the occurrence of these events, either singly or in combination, prevents an entry of non pros. Litigation by its nature is filled with events that create delay. Nonetheless, the law is settled that it is plaintiff's burden to move a case to trial, and it is plaintiff, not defendant, who bears the risk of not acting within a reasonable time. *Penn Piping, supra,* 529 Pa. at 357, n. 3, 603 A.2d at 1009, n. 3; *Metz Contracting, Inc. v. Riverwood Builders, Inc.,* 360 Pa.Super. 445, 520 A.2d 891 (1987), *alloc. den.,* 515 Pa. 623, 531 A.2d 431 (1987); *Kennedy v. Bulletin Company,* 237 Pa.Super. 66, 346 A.2d 343 (1975). If plaintiff's counsel finds herself faced with delays created by others, she must take action to move the case forward, such as filing praecipes for argument on undecided motions, moving to compel her opponent to file a certificate of readiness, or requesting a conference with the judge as provided by local rule to have the case put on the trial list. *See Penn Piping, supra,* 529 Pa. at 357, n. 3, 603 A.2d at 1009, n. 3.

■ The final requirement for entry of a judgment of non pros is that the delay be prejudicial to defendant. Appellant claims that appellee has not demonstrated any actual prejudice from the delay in this case; appellant avers that the witnesses and documents appellee claims are no longer available because of the delay in this case are not necessary to appellee's defense of its position. We find that, under *Penn Piping,* where the delay in the case is greater than two years, a lack of actual prejudice is not a bar to the entry of a judgment of non pros.

Our Supreme Court stated in *Penn Piping* that the issue presented by that case was whether appellant's docket inactivity for six years was "presumptively prejudicial" under the 1970 case of *Shrum v. Pennsylvania Electric Co.,* 440 Pa. 383, 269 A.2d 502 (1970). The court cited approvingly language from *Shrum* to the effect that a judgment of non pros might

have been entered in that case despite the lack of a showing of prejudice, since "[s]ome delays are presumptively prejudicial, and in these cases actual prejudice need not be shown." *Penn Piping,* 529 Pa. at 356, 603 A.2d at 1009. The *Penn Piping* court described this class of cases as follows: "[W]e hold that in cases involving a delay for a period of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket." *Id.,* 529 Pa. at 356, 603 A.2d at 1009.

The court in *Penn Piping* appears to adopt a per se rule in which delay in excess of two years establishes prejudice sufficient to satisfy the third prong of the non pros test. We note, however, that in its actual application of this part of the test, the court took as the measure of "delay" not the period of inactivity on the case docket, but rather the period of *unexplained* docket inactivity. The court analyzed the six-year docket delay as follows:

> Two years of the six year delay were explained to the satisfaction of the trial court by [plaintiff's] involvement in a Chapter 11 bankruptcy proceeding. Four years, however, remain unexplained. *Since the four year unexplained delay exceeds two years,* the trial court did not abuse its discretion in dismissing the case.

529 Pa. at 357, 603 A.2d at 1009 (emphasis added). Although the period of docket inactivity was six years, the period of delay to be evaluated against the two-year requirement was only four years. Presumably, if plaintiff had been in bankruptcy for five years, the presumptive finding of prejudice would not have been made.

We must add that the circumstances under which a court will reduce the period of docket inactivity as set forth above are limited. The circumstance in *Penn Piping* was the plaintiff's involvement in a bankruptcy proceeding; the court in another part of the opinion declared bankruptcy to be a "compelling reason" for delay, along with delays caused by liquidation or other operation of law, or by the parties' awaiting significant developments in the law. 529 Pa. at 356, n. 2, 603 A.2d at 1009, n. 2. It appears that to qualify as a reason

for delay that will toll the running of the two-year period, the circumstance alleged must be something that would qualify as a "compelling reason for delay." In a companion case issued nine days after *Penn Piping, Streidl v. Community General Hospital,* 529 Pa. 360, 603 A.2d 1011 (1992), the court found the first two prongs of the non pros test met and then said, as to the third, "[T]he delay exceeded two years; *and the reason for the delay does not implicate the compelling reasons set out above."* 529 Pa. at 363, 603 A.2d at 1012 (emphasis added). We read this language to suggest that, had there been a compelling reason for the delay, the period of time attributable to that reason would have been deducted from the period of docket inactivity for purposes of determining whether the delay exceeded two years and was therefore prejudicial.

In the case *sub judice,* appellant has offered no compelling reason that would warrant our reducing by any amount the period of inactivity on the docket. The period of docket inactivity in this case was over four years. Since four years is longer than two years, prejudice is presumed, and the third and final prong of the non pros test has been met.

■ Appellant's final argument on appeal is that appellee failed to follow mandated procedure on petition and rule, with the result that appellant was entitled to certain evidentiary benefits that the trial court erroneously failed to accord it. Appellant claims that, pursuant to motion practice under Pa.R.C.P. 209, once the responding party (in this case, appellant) denies the factual allegations of the moving party (in this case, appellee), the moving party is required to take depositions in support of its position or suffer a finding that the responding party's statement of the facts is conclusive. Specifically, appellant claims that the trial court should have taken as dispositive the statements in appellant's response that settlement discussions were ongoing during the period in which it was alleged that plaintiff-appellant had failed to prosecute the case with due diligence. Appellant's Brief, pp. 26–27; *see also* Appellant's Reply Brief, pp. 9–10. We disagree.

First, we note that the factual premise of appellant's argument is wrong: appellee did take depositions, jointly with appellant, on precisely the issue of whether settlement negotiations were ongoing in the critical time period. However, appellant finds these depositions to be ineffective for purposes of Rule 209 because they were taken pursuant to the order of the trial court, issued at initial oral argument,[2] rather than at appellee's own initiative. We find this fact to be irrelevant to the applicability of Rule 209 to this case.

Pennsylvania Rule of Civil Procedure 209 provides as follows:

If, after the filing and service of the answer, the moving party does not within fifteen days:

(a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or

(b) Order the cause for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule), the respondent may take a rule as of course on the moving party to show cause why he should not proceed as above. If after hearing the rule shall be made absolute by the court, and the petitioner shall not proceed, as above provided, within fifteen days thereafter, the respondent may order the cause for argument on petition and answer, in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule.[3]

The provisions of Rule 209 are very specific, and operate only when the specific conditions set forth therein obtain. As this court observed in *Instapak Corp. v. S. Weisbrod Lamp & Shade Co.*, 248 Pa.Super. 176, 374 A.2d 1376 (1977):

**2.** Reargument was held after depositions were taken, at which time the court considered the deposition testimony.

**3.** We note that the Supreme Court of Pennsylvania Civil Procedural Rules Committee has recently promulgated proposed changes to Rule 209. *See* Pa.Bulletin, Vol. 22, No. 29, p. 3730 (July 18, 1992). Counsel should therefore be alert to possible changes in the rule.

Under the rule, it is true, the factual averments of a responsive answer may be taken as true against a petitioner, but that is to happen only upon the occurrence of one of two contingencies: *either the petitioner himself ordering 'the cause for argument on petition and answer,' or respondent ordering the cause down after petitioner has ignored, for fifteen days, a rule absolute made upon him to move for depositions.* There is no provision in the rule for shortcutting its operation by ignoring these contingencies.

248 Pa.Super. at 182, 374 A.2d at 1379 (emphasis added). *Accord, National Recovery Systems v. Monaghan,* 322 Pa.Super. 183, 469 A.2d 244 (1983) (only when the petitioner himself orders the cause for argument on the pleadings or when the petitioner ignores a rule absolute to move for depositions can the factual averments of a responsive answer be taken as true against the petitioner); *Bell v. Jefferson Republican Club,* 304 Pa.Super. 157, 450 A.2d 149 (1982); *Owens v. McCurdy,* 304 Pa.Super. 510, 450 A.2d 1028 (1982).

The specific requirements for the operation of Rule 209 desired by appellant have not been met here. In this case, it was the court, not petitioner, who ordered argument on the motion for non pros; and once depositions were ordered, appellee proceeded to take them as ordered. Appellant is therefore not entitled to have the factual averments of its response to the petition for non pros taken as true against petitioner-appellee.

 Appellant also claims that Montgomery County Local Rule 209(c) mandates taking the averments of its response to be conclusive. Again we disagree. Local Rule 209(c) provides as follows:

Effect of Failure to Testify or Furnish Depositions—Whenever an averment of fact in a petition is denied in one of the forms set forth in Pa.R.C.P. 1029, or whenever the answer shall contain new matter so entitled, the denial or new matter shall be deemed admitted unless the petitioner shall support his petition (a) by testimony, in the event that a judge shall fix a time for the taking thereof, or (b) by

depositions filed at least ten (10) days before the time finally fixed for hearing argument of the matter.

Local courts have the power to formulate their own rules of practice and procedure, which will be given weight equal to the rules established by our Supreme Court provided that they do not abridge, enlarge, or modify substantive rights of a litigant. *Grossman v. Mitchell,* 291 Pa.Super. 385, 435 A.2d 1280 (1981). Like any other rules of court, local rules should be liberally construed to secure "the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." *Gutman v. Rissinger,* 334 Pa.Super. 259, 267, 482 A.2d 1324, 1328 (1984). We find that appellee here did support his petition by deposition testimony as ordered by the trial judge, in substantial compliance with Local Rule 209(c). Therefore, this rule does not provide appellant the evidentiary benefit it claims.

Having found appellant's claims to be meritless, we affirm the order of the trial court.

Order affirmed.

CAVANAUGH, J., concurs in the result.